IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SPORTS ARENA MANAGEMENT, )
INC. d/b/a AMERICAN HEARTLAND )
ICE ARENA, and 7373 N. CICERO )
PROPERTY LIMITED PARTNERSHIP, )
an Illinois Limited Partnership, ) No. 06 C 6290
)
      Plaintiffs, ) Judge Ronald A. Guzmán
)
v. )
)
K&K INSURANCE GROUP, INC., )
)
      Defendant. )

## MEMORANDUM OF OPINION AND ORDER

Plaintiffs have sued defendant for its alleged failure to obtain the insurance coverage they requested. The case is before the Court on defendant's Federal Rule of Civil Procedure ("Rule") 56 motion for summary judgment and Federal Rule of Evidence 702 motion to bar the testimony of plaintiffs' experts, Clinton Miller and James Schratz. For the reasons set forth below, the Court grants in part and denies in part the motion for summary judgment, and grants the motion to bar.

### Motion to Bar Testimony of James Schratz & Clinton Miller

On March 13, 2008, the Court issued an Order granting in part and denying in part K&K's motion for leave to file additional affirmative defenses. (*See* Min. Order of 3/13/08.) Among the defenses the Court barred defendant from filing was that plaintiffs lacked proof of proximate cause because the insurance they allegedly sought was unavailable. (*Id.*) The reason for the Court's decision was that the defense should have been known to defendant from the inception of the case but was not asserted until after the close of discovery. (*Id.*)

That result was correct, but the reasoning was not. The Court should have barred defendant from raising that defense because, unlike contributory negligence, proximate cause is an element of plaintiff's negligence claim not an affirmative matter that defendant must prove. *See* Fed. R. Civ. P. 8(c); *Bauer v. J.B. Hunt Transport, Inc.*, 150 F.3d 759, 763-64 (7th Cir. 1998) ("[P]roximate cause is an element of the *plaintiff's* case[, which] .... defendant is not required to plead ... as an affirmative defense." (quotation omitted) (emphasis original)).

Ordinarily, reaching the right result for the wrong reason would not occasion reconsideration. In this case, however, the Court relied on that reasoning in ruling on another motion – defendant's motion to bar the report of plaintiff's expert, Clinton Miller. Because Miller's report pertained only to lack of proximate cause and other barred defenses, the Court ruled that defendant's motion to strike it was moot.

The issue of proximate cause, and thus, the propriety of Miller's report, is not moot. Consequently, the Court vacates the portion of its March 13, 2008 Order striking defendant's motion to strike and now addresses that motion.

Defendant says Miller's report should be stricken because plaintiffs did not disclose him as an expert until December 2007, two months after the deadline the Court had set. (*See* Min. Order of 2/16/07 (requiring plaintiffs to disclose their experts by October 1, 2007).) Plaintiffs say they offer Miller solely to rebut the report of defendant's expert, William Warfel, and their disclosure was timely because it was made within thirty days of their receipt of Warfel's report, as required by Rule 26(a)(2)(C)(ii).

The Court agrees with defendant. "[I]n order for an insurance broker to be deemed the proximate cause of an insured's injuries, the insured must demonstrate that other coverage was available for purchase that would have applied to the loss." *Superior Aluminum Alloys, LLC v. U.S.*

2

*Fire Ins. Co.*, No. 1:05-CV-207, 2007 WL 1850841, at *5 (N.D. Ind. June 25, 2007). Thus, Miller's opinion that other insurance carriers would have been willing to modify the earth movement and corrosion exclusions to provide coverage for plaintiffs' loss is not rebuttal evidence, but evidence that supports an element of plaintiffs' tort claim.

Plaintiffs' mischaracterization of Miller as a rebuttal witness is illustrated by the testimony of the expert they proffered for their case-in-chief, James Schratz. Among other things, plaintiffs seek to have Schratz testify that "the position K&K is taking that they could not endorse the permafrost exclusion out of the policy is at least debatable if not highly suspect." (Def.'s Mot. Bar Experts, Ex. 7, Schratz Dep. at 137.) Schratz's deposition testimony, which was taken *before* defendant's expert issued his report, shows that plaintiffs knew defendant would attack proximate cause by arguing that the requested coverage was unavailable. (*Compare* Pls.' App. Supp. LR 56.1(b)(3)(C) Stmt., Ex. 8, Warfel Report dated 11/9/07, *with* Def.'s Mot. Bar Experts, Ex. 7, Schratz Dep. dated 10/23/07.) Thus, regardless of what plaintiffs call him, Miller is not a rebuttal expert. *See Braun v. Lorillard Inc.*, 84 F.3d 230, 237 (7th Cir. 1996) ("The plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief."); *United States v. Milan*, 966 F.2d 1165, 1176 (7th Cir. 1992) (affirming trial court's exclusion of surrebuttal testimony from a witness who was known and available to defendant during his case-in chief). Because plaintiffs did not timely disclose Miller, the Court grants defendant's motion to strike his report and bar his testimony.

Defendant also seeks to bar James Schratz, plaintiff's other expert, from testifying that: (1) the coverage requested by plaintiffs was likely available; (2) when an insured says "cover everything," an insurer has a duty to inquire further about the insureds' needs; and (3) if an insurer highlights any exclusions to the insured, then it has the duty to highlight all "that may be of particular importance [to

3

the insured] based on [the insurer's] knowledge of the insured's operation." (Mot. Bar Experts, Ex. 7, Schratz Dep. at 125-27, 137-40.) Defendant says these opinions are improper because, among other reasons, Schratz is not qualified to testify about them.

The Court agrees. Schratz can offer these opinions only if he has the requisite expertise and the opinions are reliable. Fed. R. Evid. 702. The Court gauges reliability by "determin[ing] whether the expert is qualified in the relevant field and . . . examin[ing] the methodology [he] . . . used in reaching his conclusions." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). Further, an expert's testimony is reliable, only if "there [is] a link between the facts or data [he] has worked with and the conclusion [his] testimony is intended to support." *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003).

First, Schratz's testimony establishes that he is not an expert on insurers' underwriting practices or their practices in explaining coverage to insureds. In fact, he repeatedly emphasized that his nearly thirty years of experience in the insurance industry was in claims, not underwriting. (*See, e.g.*, Mot. Bar Experts, Ex. 7, Schratz Dep. at 57-58 (testifying that he told plaintiffs' counsel "most of my background was in claims handling" and that he thought plaintiffs "needed an underwriting expert"; *id.* at 59 (saying that he "found [it] . . . highly unlikely . . . in light of the fact that Steve Morrow said he was willing to pay a substantial premium" that the permafrost exclusion could not have been deleted, "[b]ut that's coming from a claims person" and he thought plaintiffs "should get [that opinion] from an underwriting person"; *id.* at 130-31 (testifying that "when you start with exclusions and you have special knowledge, then you have to explain the ones that may be of particular concern to the insured. And that really gets into an underwriter function . . . which exclusion should apply. I'm not an underwriter. I can't tell you that." ); *id.* at 138 (explaining that he advised plaintiffs' counsel to get an underwriting expert to opine on the deletion of the permafrost exclusion

4

because "I know what underwriters can do, but I don't know if the Court will accept that testimony because I'm claims person, I'm not an underwriter.") In short, the record shows that Schratz does not have the expertise required to offer his opinions.

Even if he did, the Court would still bar him from testifying about them because they are not sufficiently reliable. Schratz did not identify any methodology or sources on which his opinions are based. When he was asked whether he knew of "any authoritative source, case, statute, expert, secondary source, anything in the world" that corroborated his view of the insurer's duty, Schratz replied: "I'm an expert who just put that forward." (*Id.* at 127.) In addition, he said his opinions were not based on the *Couch* or *Appleman* insurance treatises, he had not "look[ed] at all of the [policy's] exclusions" (*id.* at 185), had never "seen an endorsement that [returned] coverage for losses caused" by permafrost or corrosion (*id.* at 140) and had not asked anyone at Great American whether the company would have issued such an endorsement (*id.*). Because Schratz's opinions are based solely on his own, admittedly tangential, experience, they are not sufficiently reliable to be admitted in this case. Defendant's motion to bar Schratz from testifying is granted.

## Summary Judgment

### Facts

Sports Arena Management, Inc. operated the American Heartland Ice Arena, which was owned by 7373 N. Cicero Property Limited Partnership, from 1997 through sometime in 2004. (Def.'s LR 56.1(a) Stmt. ¶¶ 1, 19; *id.*, Ex. 2, Morrow Dep. at 30-32.) Stephen Morrow is the principal of both Sports Arena Management and 7373 N. Cicero Property Limited Partnership. (Def.'s LR 56.1(a) Stmt. ¶ 3.)

5

From 1997-2004, K&K Insurance Group, Inc. issued and bound insurance policies for the ice arena, first on behalf of TIG and later on behalf of Great American Assurance Company. (*Id.* ¶ 5.) Like most ice arenas, Heartland used a chiller system, which a K&K underwriting guide describes as, a "permanent refrigeration system[]with steel or plastic pipes imbedded in sand including a sub-floor heating system to prevent permafrost below the rink floor." (Pls.' App. Supp. LR 56.1(b) Stmt., Ex. 29, Underwriting Guide at AON/K&K 02086.)

At some point, Heartland's chiller system malfunctioned, causing the pipes to corrode and the soil under the rink to freeze and expand. (Pls.' LR 56.1(b)(3)(C) Stmt. ¶ 31; Def.'s Resp. Pls.' LR 56.1(b)(3)(C) ¶ 31.) As a result, in February 2004, the arena's floor heaved, causing serious damage to the skating surfaces. (*Id.*)

Plaintiffs made a claim to their insurer, Great American, which was denied because their policy "excludes loss caused directly or indirectly by earth movement." (Def.'s LR 56.1(a) Stmt., Ex. 12, Letter from Great American to Sports Arena Management of 11/24/04 at AON/K&K 00072.)

Subsequently, plaintiffs sued Great American for, among other things, a declaration of coverage. *See Sports Arena Mgmt., Inc. v. Great Am. Ins. Group*, No. 06 C 788, 2007 WL 684003, at *1 (N.D. Ill. Mar. 1, 2007). Judge Conlon granted summary judgment to defendants because plaintiffs' claim was barred by the policy's "earth movement" and "corrosion" exclusions. *Id.* at *3-4.

Plaintiffs then filed this suit claiming that K&K had breached its duty of care to, and contract with, plaintiffs by failing to obtain insurance coverage for the arena that Morrow had requested.

## Discussion

To prevail on a summary judgment motion, "the pleadings, the discovery and disclosure materials on file, and any affidavits [must] show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

In Counts I and III, the only remaining claims in this suit, plaintiffs allege that defendant breached its duty of care to, and its contract with, plaintiffs by failing to procure the insurance coverage they requested. Defendant says Sports Arena Management does not have standing to pursue these claims because it was dissolved by the Illinois Secretary of State before these causes of action accrued. (*See* Def.'s LR 56.1(a) Stmt., Ex. 17, Certificate of Dissolution of 11/1/03.)

Though defendant invokes the doctrine of standing, it really seems to be contesting Sports Arena Management's capacity to sue. *See Bd. of Educ. of City of Peoria, Sch. Dist. No. 150 v. Ill. Bd. of Educ.*, 810 F.2d 707, 709-10 (7th Cir. 1987) ("Capacity has been defined as a party's personal right to come into court, and should not be confused with the question of whether a party has an enforceable right or interest . . . ." (quotation omitted)); *see also Firestone v. Galbreath*, 976 F.2d 279, 283 (6th Cir. 1992) ("[C]apacity is conceived to be a party's personal right to litigate in a federal court" while standing questions "whether the plaintiff can show an injury in fact traceable to the conduct of the defendant." (quotation omitted)).[1] According to Rule 17, a corporation's capacity to sue in federal court is determined "by the law under which it was organized," in this case, Illinois. Fed. R. Civ. P. 17(b)(2); (Pls.' LR 56.1(b)(3)(B) Stmt. ¶ 1).

---

[1] Defendant does not argue that the other plaintiff, 7373 N. Cicero Property Limited Partnership, lacks capacity to sue.

7

The Illinois Business Corporation Act ("BCA") states that:

> [T]he dissolution of a corporation . . . by the issuance of a certificate of dissolution . . . shall not take away nor impair any civil remedy available to or against such corporation . . . for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within five years after the date of such dissolution.

805 Ill. Comp. Stat. 5/12.80. It also says, however, that a dissolved corporation can be reinstated if it files all of the reports, fees, franchise taxes and penalties it owes, and upon reinstatement its:

> corporate existence shall be deemed to have continued without interruption from the date of the issuance of the certificate of dissolution, and the corporation shall stand revived with such powers, duties and obligations as if it had not been dissolved; and all acts and proceedings of its officers, directors and shareholders, acting or purporting to act as such, which would have been legal and valid but for such dissolution, shall stand ratified and confirmed.

*Id.* 5/12.45(d).

It is undisputed that the insurance claim from which this suit arises was denied on November 24, 2004, more than a year after Sports Arena Management was administratively dissolved, and that plaintiffs have not sought to have the corporation reinstated. (*See* Pls.' LR 56.1(b)(3)(B) Stmt. ¶ 20; Def.'s LR 56.1(a) Stmt., Ex. 17, Certificate of Dissolution of 11/1/03; Pls.' Mem. Law Opp'n Def.'s Mot. Summ. J. at 15.) The question, then, is whether a dissolved corporation can sue on claims that accrued *after* its dissolution as well as those that accrued before?

The Illinois Appellate Court addressed this question in *Henderson-Smith & Associates, Inc. v. Nahamani Family Service Center, Inc.*, 752 N.E.2d 33 (Ill. App. Ct. 2001). In that case, an accounting firm sued one of its clients for failing to pay for services the firm had rendered after it was dissolved. *Id.* at 35-36. The defendant contended that, because it was dissolved, the plaintiff lacked the capacity to sue. *Id.* at 36. The appellate court disagreed:

> Exploring the law in other jurisdictions, we find Florida's relation back provision has language almost identical to the language in Illinois' ("Whenever the application for

8

reinstatement is approved and filed by the Department of State, the corporate existence shall be deemed to have continued without interruption from the date of dissolution." Section 607.271(5), Florida Statutes (1985)). Florida courts interpreting that language have held that involuntary dissolution for failure to pay fees does not bar a corporation from suing on a claim that arose after dissolution but before reinstatement. We think this is the proper course.

*Id.* at 39 (citations omitted). In light of *Henderson-Smith*, the Court holds that Sports Arena Management has the capacity to sue, despite its dissolution.[2]

Even if Sports Arena Management has the capacity to sue, K&K says that it is still entitled to judgment on the Count I tort claim because the undisputed facts establish that it was not the proximate cause of plaintiffs' injury. The Court agrees. Given the Court's rulings on defendant's motions to strike and bar, the only evidence of record on this issue is that of plaintiffs' expert, William Warfel. Warfel testified that, once the chiller system malfunctioned, "it was inevitable that floor heaving would occur within a relatively short period of time." (Pls.' App. Supp. LR 56.1 (b)(3)(C) Stmt., Ex. 8, Warfel Report at 4.) Moreover, he said:

> Private insurance simply cannot be relied upon to address a loss that is inevitable. The custom and practice in the insurance industry is to only insure those losses that are truly contingencies. In the event that a certain loss were insured, the cost of insurance would be prohibitive; the cost of insurance is economically feasible only if the likelihood of loss is relatively small (i.e., well less than 100 percent). In other words, deletion of the [earth movement and corrosion] exclusions would result in the exposure to loss that is addressed in the applicable property insurance policy being rendered uninsurable. Coverage simply is not available in the market for an uninsurable exposure.

(*Id.* at 6; *see* Def.'s LR 56.1(a) Stmt., Ex. 16, Warfel Dep. at 150 ("I'm saying, regardless of the cause of the corrosion, regardless of the cause of the permafrost, those exclusions are universally contained

---

[2] Sports Arena Management may not, however, secure a judgment until it is reinstated. *See Henderson-Smith*, 752 N.E.2d at 41 (saying that "court should not have entered judgement for Henderson-Smith before it paid its taxes" because "enter[ing] judgment for a delinquent corporation" is against public policy).

9

in property insurance policies and are uninsurable.").) Because the undisputed facts establish that coverage for loss caused by earth movement or corrosion, the exclusions held to apply here, was not commercially available, plaintiffs have not raised a genuine issue of material fact as to whether K&K was the proximate cause of their damages.

K&K says the lack of proximate cause evidence disposes of plaintiffs' Count III contract claim as well and does not otherwise address it. But proximate cause is a tort concept, not an element of a contract claim. *See Barille v. Sears Roebuck & Co.*, 682 N.E.2d 118, 121 (Ill. App. Ct. 1997) ("In order to state a cause of action for breach of contract, a plaintiff must establish: (1) an offer and acceptance; (2) consideration; (3) definite and certain terms of the contract; (4) plaintiff's performance of all required contractual conditions; (5) defendants' breach of the terms of the contract; and (6) damage resulting from the breach."). Moreover, though there is a cause component to a contract claim – the breach must be the cause of the claimed damages – it comes into play only if a breach has occurred.

Though defendant does not address the issue, its submissions cannot be construed as arguing that it breached its contract with plaintiffs *i.e.*, failed to obtain an insurance policy with the coverage they requested, but that its breach was not the cause of plaintiffs' damages. Rather, those submissions can only be construed as arguing that defendant did not breach its contract with plaintiffs because obtaining a policy with coverage for loss caused permafrost or corrosion was not one of its terms. Viewed favorably to plaintiffs, however, the record supports the inference that defendant had agreed to obtain such coverage. Morrow testified that he told K&K to obtain coverage for "all machinery and equipment that I have inside that [building] and everything that is part of that building," including the chiller system and "the floor . . . [and] pipes . . . connected [to it]." (Def.'s LR 56.1(a) Stmt., Ex. 2, Morrow Dep. at 88-91.) Further, one of K&K's underwriting guides suggests that it knew ice arenas

10

have chiller systems that include underground pipes and are used "to prevent permafrost below the rink floor." (Pls.' App. Supp. LR 56.1(b) Stmt., Ex. 29, K&K Underwriting Guide at AON/K&K 02086.) Morrow's alleged statement that he wanted coverage for the chiller system and the pipes and floor attached to it, coupled with K&K's apparent knowledge of the existence, components and purpose of chiller systems, supports the inference that it understood Morrow was requesting coverage for loss caused by permafrost or corrosion. Because the record discloses a disputed factual issue as to at least one element of plaintiffs' contract claim, defendant is not entitled to judgment on it.

Even if fact issues remain as to other portions of plaintiffs' claim, defendant argues that none exist as to the damages they seek for the cost of repairing, maintaining and operating the arena after it was damaged. (*See* Pls.' LR 56.1(b)(3)(B) Stmt. ¶¶ 48-51 (stating that plaintiffs incurred more than $260,000.00 in such expenses).) The only evidence plaintiffs offer for this part of their damage request is Morrow's testimony which, defendants say, is too speculative to support it. (*See* Def.'s Mot. Summ. J. at 15; Def.'s Reply Supp. Mot. Summ. J. at 15.)

It is undisputed that Morrow has no documents to corroborate his testimony that plaintiffs spent over $260,000.00 to repair, maintain and operate the ice arena after it was damaged. (*See* Pls.' LR 56.1(b)(3)(B) Stmt. ¶¶ 48-51.) But defendant has not established that Morrow lacks personal knowledge of these expenditures or otherwise has no basis for offering this testimony. Absent such evidence, defendant is not entitled to judgment as a matter of law on this portion of plaintiffs' damages claim.

One final note. The fact that plaintiff's contract claim survived summary judgment does not necessarily mean it has merit. Because defendants failed to address the contract claim specifically, their failure to show the absence of material fact issues as to any of its elements does not mean that

such issues exist. Moreover, because defendant attacked only the quality of plaintiffs' consequential damages evidence, the Court did not address the propriety of their request for such damages in the context of a contract claim. In short, though defendant did not prevail on it, that does not necessarily mean that plaintiffs' contract claims is legally or factually unassailable.

## Conclusion

For the reasons set forth above, defendant has shown that there are no genuine issues of material fact with respect to the plaintiffs' tort claim and defendant is entitled to judgment as a matter of law on that claim. Defendant has not, however, made the same showing with respect to plaintiffs' contract claim. The Court, therefore, grants defendant's motion for summary judgment [doc. no. 73] as to Count I and denies it as to Count III. The Court also vacates the portion of its March 13, 2008 order [doc. no. 96] striking as moot defendant's motion to bar Clinton Miller's report, grants defendant's motion to bar Clinton Miller's report [doc. no. 59], and grants defendant's motion to bar plaintiffs' experts [doc. no. 72].

**SO ORDERED.** ENTERED: 6/26/08

RONALD A. GUZMAN
**United States District Judge**